# Exhibit A



# SHARED APPRECIATION LOAN NOTE

THIS IS A **10**-YEAR SHARED APPRECIATION LOAN NOTE. THE LENDER'S INTEREST ON THE LOAN INCLUDES **20.66%** OF THE NET APPRECIATED VALUE OF THE PROPERTY SECURING THIS NOTE WHICH IS DUE AND OWING LENDER UPON THE OCCURRENCE OF ANY ONE OF CERTAIN EVENTS DESCRIBED IN THIS NOTE, INCLUDING THE SALE OR TRANSFER OF THE PROPERTY SECURING THIS NOTE. FOR FURTHER INFORMATION, READ THE NOTICE ENTITLED "IMPORTANT INFORMATION ABOUT MEDTRONIC, INC. SHARED APPRECIATION LOAN."

|  |  |
|---|---|
| **$250,000.00** | **Santa Rosa, CA** |
| (Principal Amount) | (City / State) |

**05/17/07**
(Date)

FOR VALUE RECEIVED, **David P. Ruschke** ("Borrower"), promises to pay to MEDTRONIC, INC. ("Lender"), or to its order, the principal sum of **Two Hundred Fifty Thousand Dollars and 00/100 ($250,000.00)**, plus contingent interest ("Contingent Interest") as provided in this Note. No interest other than Contingent Interest shall be payable on this Note; provided, however, that in the event principal and Contingent Interest hereunder are not paid by Borrower to Lender within thirty (30) days of the date the same become due, then the sum of the outstanding principal and Contingent Interest shall, until paid in full, bear interest at the rate of (12%) per annum or, if a greater amount is permitted under applicable law, at the highest rate permitted by law to be charged by Lender. Except as provided above, and subject to the provisions of paragraphs 1, 2 and 3 hereof regarding the payment of principal and Contingent Interest, no payments shall be due hereunder until **May 17, 2017** ("Maturity"), at which time the entire principal balance of this Note plus Contingent Interest shall be due and payable. All payments required to be made by Borrower hereunder shall be payable in lawful money of the United Stated of America at 710 Medtronic Parkway NE, Minneapolis, Minnesota 55432-5604, or such other place as Lender shall designate.

    1. The indebtedness evidenced by this Note is secured by a Second Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Second Deed of Trust") from Borrower, as trustor to **First American Title Company**, as trustee, in favor of Lender, as beneficiary, covering certain real property located in **Sonoma** County, California, as more particularly described in the Second Deed of Trust (the "Property"), dated **May 17, 2017**. All covenants, conditions and agreements contained in the Second Deed of Trust are hereby made a part of this Note to the same extent and with the same

1

force and effect as if they were fully set forth herein. The Second Deed of Trust provides, in part, that if Borrower shall at any time sell, contract to sell, lease with option to purchase, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise, except only for any encumbrance of the Property subordinate to the Second Deed of Trust (hereinafter referred to as a "Transfer" of the Property), Lender shall have the right to declare the entire principal amount of this Note then outstanding, plus Contingent Interest and all other sums or payments required under this Note and the Second Deed of Trust, to be due and payable immediately, and notwithstanding the stated Maturity of this Note, the principal amount thereof, plus Contingent Interest and all other sums or payments required under this Note and the Second Deed of Trust shall immediately become due and payable. Borrower will be deemed to waive any notice requirement otherwise required regarding demand of the Note by any of the Borrower's aforementioned actions. Notwithstanding the foregoing, the Second Deed of Trust provides that Lender may accelerate the loan upon a foreclosure under any encumbrance of the Property regardless of whether such encumbrance is superior or subordinate to the Second Deed of Trust. Nothing in the foregoing language shall limit Medtronic, Inc. from transferring, assigning, or otherwise disposing of its interest in the Second Deed of Trust. In the event that there is any actual conflict between the express terms of this Note and the express terms of the Second Deed of Trust, the terms of this Note shall prevail.

2. Borrower and Lender agree that they shall initiate the appraisal process for the Property described in subparagraph 3(b) below upon the occurrence of any Adjustment Event as hereinafter defined or any other event described in the first sentence of paragraph 3 below. An Adjustment Event shall be deemed to take place upon the first to occur of:

(a) The date on which **David P. Ruschke** ("Employee") ceases to use the Property as his or her principal residence;

(b) The date on which Employee transfers part or all of his or her interest in the Property, or his or her interest is transferred by operation of law or otherwise;

(c) The date on which Employee is relocated to a different location of employment;

(d) The date on which Employee's employment relationship with the Lender has been terminated for any reason, whether voluntarily or involuntarily; or

(e) One year from the date on which Lender notifies Borrower in writing that as a result of Employee's disability Lender desired to call all outstanding principal, Contingent Interest and other sums owing under the Note and the Second Deed of Trust immediately due and payable. A long-term disability will

be deemed to have occurred <u>after</u> the disability prevents the Employee froworking on a regular and continuous basis for Lender for a period of at least 6 months.

3. At the earliest of the date of (i) an Adjustment Event, (ii) Maturity, (iii) any acceleration of the Maturity date of this Note, or (iv) prepayment of the indebtedness evidenced by this Note in full (collectively called "Payment Due Date"), Borrower shall pay to Lender, as Contingent Interest, an amount equal to **20.66%** of the amount, if any, by which the Appreciated Value (as hereinafter defined) of the Property at such earliest date exceeds the Borrower's Cost (as hereinafter defined).

    (a) The "Borrower's Cost" is the sum of, without duplication: (i) **$1,210,000.00.** (the purchase price paid by Borrower for the Property but excluding any points or loan fees paid by Borrower in connection with any financing of Borrower's acquisition of the Property), and (ii) the value of Capital Appreciation as a result of Capital Improvements made by Borrower to the Property (as defined in the Second Deed of Trust). As used herein, the term Capital Improvements are deemed Capital Improvements under standard accounting practices

    (b) "Appreciated Value" is the greater of the Fair Market Value of the Property determined as set forth in this subparagraph 3(b) or the total consideration received by Borrower for any Transfer of the Property on account of which Contingent Interest is payable. The Fair Market Value of the Property shall be determined by Borrower and Lender as follows:

        (i) Within sixty (60) days of the applicable date set forth in the first sentence of paragraph 3 above, Borrower and Lender shall each appoint one appraiser who is qualified as a Senior Residential Appraiser of the Society of Real Estate Appraisers. If Borrower fails to submit the name of an appraiser to Lender within such sixty (60) day period, then Lender may select one appraiser and the appraisal for the Property submitted to Lender by such appraiser shall be the Fair Market Value of the Property. If, however, the higher of the two appraisals exceeds the lower appraisal by greater than five percent (5%), the two appraisers shall appoint a third appraiser to appraise the Property. The third appraisal shall be averaged with the previous two appraisals, and the average of the three appraisals shall be deemed the Fair Market Value of the Property. The cost of the appraisals shall be borne by the Lender.

        (ii) If the Property has been damaged (other than normal wear and tear) and the damage has not been fully repaired, the determination of Fair Market Value of the Property shall be based on the condition of the Property as though the Property had been fully repaired.

(iii) Borrower will give the appraisers prompt and reasonable access to the Property. Notwithstanding anything to the contrary herein, an appraisal shall be valid for six months only, and thereafter, if the Fair Market Value of the Property must be determined in order to comply with the terms of this Note, the Property shall be appraised again as described above.

4. Borrower and Lender acknowledge that in the event the "Appreciated Value" of the Property calculated pursuant to subparagraph 3(b) above does not exceed the "Borrower's Cost," as defined therein, no Contingent Interest shall be due Lender and Lender shall not be required to compensate Borrower in any manner as a result of any decrease in the value of the Property or any other failure of the Appreciated Value to exceed the Borrower's Cost.

5. Lender may procure and maintain a policy of credit life insurance on the life of Borrower (the "Policy"), in the amount of the outstanding principal of the Note, and Lender shall be responsible for payment of the premiums due from time to time on the Policy. In the event of the death of the Borrower, proceeds from the Policy shall be applied to the outstanding principal of the Note, and all Contingent Interest on the Note shall be forgiven by Lender.

6. If Borrower defaults under this Note or the Second Deed of Trust, then the entire principal amount outstanding under this Note, plus Contingent Interest and all other sums or payments required under this Note or the Second Deed of Trust shall, at the option of Lender, become immediately due and payable. Lender may exercise this option to accelerate following any default by Borrower regardless of any prior forbearance.

7. In the event Lender forecloses the Second Deed of Trust securing this Note (either judicially or under the power of sale as provided in the Second Deed of Trust), the sum which the Lender may bid or demand pursuant to the Second Deed of Trust at any such foreclosure sale or in any of the Notices or other procedural requirements relating to such foreclosure sale shall include, in addition to the amount of unpaid principal and other permitted amounts, the amount of Contingent Interest due Lender. In either case, the amount of Contingent Interest due Lender shall be determined as provided under the terms of this Note, and the Appreciated Value of Property shall be determined in accordance with subparagraph 3(b) above. Borrower agrees to be bound by such a determination of the amount of Contingent Interest due Lender for all purposes of such foreclosure and sale.

8. Upon any Transfer of the Property, Borrower shall furnish to Lender an executed copy of the seller's copy of HUD Form 1 or other closing statement signed by Borrower and the purchaser and such other evidence of the sale price as Lender may reasonably request.

4

9. Borrower may prepay the principal amount outstanding in whole or in part without penalty; provided that no partial prepayment shall reduce the amount of contingent interest payable to Borrower hereunder.

10. Presentment, notice of dishonor, demand, protest, any release or discharge arising from any extension of time, discharge of a prior party, release of any or all of the security for this Note, or other cause of release or discharge other than actual payment in full hereof are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

11. Borrower shall have no right of set-off under this Note.

12. Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property address stated below, or to such other address as Borrower may designate by notice to Lender. Any notice by Borrower to Lender shall be given by mailing such notice by certified mail, return receipt requested, to Lender as follows:

> Medtronic, Inc.
> ATTN: Corporate Employee Relocation
> 3850 Victoria St. N
> Shoreview, MN  55126

or at such other address as may have been designated by notice to borrower.

13. In the event of a lawsuit or other proceeding to enforce or interpret the provisions of this Note, the party not prevailing in such lawsuit or other proceeding shall pay to the other party the costs of such proceeding and reasonable attorneys' fees in such amount as the court shall determine.

14. If any provision of this Note is invalid or unenforceable under any state law which is not preempted by federal law, regulation or order, such provision shall have no effect except to the extent permitted by such law, regulation or order, but all other provisions of this instrument shall remain in full force and effect.

15. The failure of Lender to enforce any of the provisions of this Note at any time shall not be construed to be a waiver of any such provisions or of the right of Lender thereafter to enforce any such provision.

16. This Note shall be construed in accordance with and governed by the laws of the State of **California**.

17. Nothing herein shall be deemed to constitute Borrower and Lender as joint venturers and the relationship of Borrower and Lender hereunder shall only be that of debtor and creditor.

18. THE LOAN EVIDENCED BY THIS NOTE IS PAYABLE IN FULL NOT LATER THAN **MAY 17, 2017** OR SUCH EARLIER DATE AS MAY RESULT FROM THE ACCELERATION HEREOF. AT MATURITY YOU MUST PAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE INTEREST. LENDER IS NOT OBLIGATED TO REFINANCE THE UNPAID PRINCIPAL BALANCE OF THE LOAN OR INTEREST AT THAT TIME; YOU ALONE WILL BE RESPONSIBLE FOR OBTAINING REFINANCING. IF YOU REFINANCE THE LOAN, YOUR PAYMENTS MAY BE SUBSTANTIALLY AFFECTED. IN ADDITION, IF YOU REFINANCE THE LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM LENDER FOR THE LOAN.

This Promissory Note is made and entered into as of the date stated on the first page hereof.

Property Address: 1483 Los Alamos Road, Santa Rosa, CA 95409

Dated: 5/15/07    Borrower: _____
                             David P. Ruschke

Dated: _____    Borrower: _____
                             n/a

6



# IMPORTANT INFORMATION ABOUT

# MEDTRONIC, INC.

# SHARED APPRECIATION LOAN

Medtronic, Inc. is pleased to offer you the opportunity to finance your home through a shared appreciation loan.

Because the shared appreciation loan differs from the usual mortgage loan, it is important that you have a detailed explanation of the special features of the loan before you apply. You will receive more information about your shared appreciation loan, which you should read and understand before you sign the loan documents.

All employees shall apply __100__% of the equity received from the sale of their present home towards the purchase of their new home. The loan must be used for the purchase of a family residence, and the loan will not be transferable or assumable by any other party. The shared appreciation loan will be recorded as a second mortgage, and Medtronic, Inc. will not subordinate its loan to a third mortgage position.

No interest other than Contingent Interest, as described below, will be payable on this loan, except that if you do not pay the principal amount of the loan and Contingent Interest when due, interest will accrue on such principal and Contingent Interest until the amount of the loan is repaid in full at the rate of __12__% per annum, or if a greater amount is permitted under applicable law, at the highest rate permitted by law to be charged by us.

## CONTINGENT INTEREST

This loan provides that you, as borrower must pay to us, as lender, as Contingent Interest **20.66%** of the net appreciated value of the real property which secures the loan (the "Property"). This Contingent Interest is due and payable upon the earliest of the date of (i) an Adjustment Event (as described under Other Important Information below), (ii) prepayment of the loan in full, (iii) any acceleration of the loan, or (iv) Maturity (as defined in your shared appreciation loan note ("the Note"). The dollar amount of Contingent Interest, if any, which you will be required to pay will be determined at this time. If the Property does not appreciate in value, you will owe us no Contingent Interest.

1

Your obligation to pay Contingent Interest will reduce the amount of the appreciation, if any, that you will realize on the Property. This appreciation will not produce a real gain in your equity in the Property, unless the appreciation rate exceeds the general inflation rate, but you will be required to pay a portion of the appreciation as Contingent Interest without regard to whether appreciation has resulted in a real gain.

If you sell or refinance your home, you normally will try to receive enough cash to pay the loan balance, Contingent Interest, and expenses of sale. However, if you sell with only a small down payment, you may possibly not receive enough cash to pay our loan balance or the Contingent Interest, and, in that event, it will be necessary for you to provide cash from other funds.

If you do not sell the property before the end of the term of this loan (_Ten _years) you will need to refinance this loan at that time. We are not obligated to refinance either the unpaid principal balance of the loan or the Contingent Interest upon the sale of the Property or the occurrence of any other event triggering the payment of principal or Contingent Interest. In general, the more your property appreciates, the larger will be the amount of the Contingent Interest that you will have an obligation to pay or refinance.

<u>Calculating the Contingent Interest</u>

Contingent interest will be calculated as follows:

FAIR MARKET VALUE OF THE Property (greater of appraised value or sale price of Property)

- ( less )     BORROWER'S COST OF THE Property (As further described in the Note).

- ( less )     Capital Appreciation to the Property as a result of Capital Improvements made by you (as defined in the Second Deed of Trust and Loan Note).

= ( equals )  NET APPRECIATED VALUE

x ( times )   **20.66**% OWED TO LENDER

_____

= ( equals )  TOTAL CONTINGENT INTEREST DUE

2

05/08/2007  08:14  7075435420  MEDTRONIC VASC  PAGE  03/07

## Determining Fair Market Value

Fair market value is determined to be the greater of: (1) the price of the property upon sale at the time the note becomes due or is terminated, or (2) the average property appraisal attained by averaging the appraisals by an appraiser appointed by Medtronic, Inc. and an appraiser appointed by you. Each appraiser shall be qualified as a Senior Residential Appraiser of the society of Real Estate Appraisers. If the higher of the two appraisals exceeds the lower appraisal by greater than 5%, then the two appraisers shall select a third appraiser to appraise the Property. The third appraisal value shall be averaged with the other two appraisal values and this final average appraisal value shall be deemed the fair market value of the Property. The cost of the appraisals shall be borne by Medtronic, Inc.

## Determining Value of Capital Improvements

Capital Improvements are those improvements made to the Property which are deemed Capital Improvements under standard accounting practices. The value of Capital Improvements made by you may be added to your cost of the Property. The appraisers appointed to determine the Fair Market Value of the Property, as described above, shall each appraise (separate from the Fair Market Value Appraisals) the value of all Capital Improvements made by you to the Property. You must retain and submit receipts of the cost for all Capital Improvements to each appraiser. The value that the Capital Improvements add to the Fair Market Value of the Property will be determined by averaging the two Capital Improvement appraisals. If a third appraisal is required for determining the Fair Market Value of the Property, as described above, then the third appraiser shall also appraise the value of the Capital Improvements. This third appraisal shall be averaged with the other two appraisals. The value obtained from averaging the appraised values shall be conclusively deemed the value of the Capital Improvements that you will be able to deduct from the Fair Market Value of the Property to obtain the Net Appreciated Value (as defined below), even if the average appraised value is less than the actual cost of the Capital Improvements.

Example A:

(1) Actual cost of Capital Improvements    $15,000
(2) Appraiser #1 appraised value           $14,000
(3) Appraiser #2 appraised value           $20,000
(4) Average appraised value                $17,000
    ($14,000 plus $20,000 divided by 2)

05/08/2007  08:14  7075435428  MEDTRONIC VASC  PAGE  04/07

The value of the Capital Improvements that you would subtract from the Fair Market Value of the Property would be $17,000.

Example B:

(1) Actual cost of Capital Improvement     $15,000
(2) Appraiser #1 appraised value           $14,000
(3) Appraiser #2 appraised value           $12,000
(4) Average appraised value                $13,000
    ($14,000 plus $12,000 divided by 2)

The value of the Capital Improvements that you would subtract from the Fair Market Value of the Property would be $13,000, even though the actual cost of the improvements is $15,000.

### Determining Net Appreciated Value

We are entitled to receive **20.66**% of the net appreciated value of the Property as Contingent Interest. As demonstrated by "Calculating the Contingent Interest" above, net appreciated value equals (1) the fair market value of the Property at the time Contingent Interest is due, less (2) your "cost" of the Property, as defined, less (3) the value of Capital Improvements.

THE LOAN EVIDENCED BY THE NOTE IS PAYABLE IN FULL ON **MAY 17, 2017**. AT MATURITY YOU MUST PAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE CONTINGENT INTEREST, IF ANY. WE ARE NOT OBLIGATED TO REFINANCE THE UNPAID PRINCIPAL BALANCE OF THE LOAN OR CONTINGENT INTEREST (IF ANY); YOU ALONE WILL BE RESPONSIBLE FOR OBTAINING REFINANCING. IF YOU REFINANCE THE LOAN, YOUR PAYMENTS MAY BE SUBSTANTIALLY AFFECTED. IN ADDITION, IF YOU REFINANCE THE LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM US FOR THE LOAN.

### Tax Consequences

USE OF SHARED APPRECIATION LOAN WILL HAVE INCOME TAX OR ESTATE PLANNING CONSEQUENCES WHICH WILL DEPEND UPON YOUR OWN FINANCIAL AND TAX SITUATION. YOU ARE URGED TO CONSULT WITH YOUR ACCOUNTANT, ATTORNEY, OR OTHER FINANCIAL ADVISOR CONCERNING WHAT TAX CONSEQUENCES THIS LOAN WILL HAVE ON YOU PERSONALLY. IN PARTICULAR, YOU SHOULD DISCUSS THE TAX DEDUCTIBILITY OF THE CONTINGENT INTEREST PAYMENT, YOUR RIGHT TO UTILIZE THAT DEDUCTION IN YEARS OTHER THAN THE YEAR IT IS PAID, AND THE EFFECT OF THE LOSS OF TAX BENEFITS BEFORE THAT TIME.

05/08/2007  08:14  7075435420  MEDTRONIC VASC  PAGE  05/07

Other Important Information

1.   An Adjustment Event will be deemed to take place upon the first to occur of:

(a) The date on which you cease to use the Property as your principal residence;

(b) The date on which you transfer part or all of your interest in the Property, or your interest is transferred by operation of law or otherwise;

(c) The date on which you are relocated to different location of employment;

(d) The date on which your employment relationship with Medtronic, Inc. has been terminated for any reason, whether voluntarily or involuntarily or by reason of your death or retirement.

(e) One year from the date on which Medtronic, Inc. notifies you in writing that as a result of your disability, Medtronic, Inc. desires to call all outstanding principal, Contingent Interest and other sums owing under the Note and the Deed of Trust immediately due and payable. A long term disability will be deemed to have occurred <u>after</u> the disability prevents you from working on a regular or continuous basis for Medtronic, Inc. for a period of at least 6 months.

2.   At Medtronic's option, we may provide you with a credit life insurance policy in your name for the amount of the shared appreciation loan. In the event of your death, the proceeds from the policy will be used to pay the outstanding loan. Any Contingent Interest that is otherwise due will be forgiven.

3.   You will be responsible for purchasing an additional lender's title insurance policy on the Property for the amount of the shared appreciation loan borrowed from us at the time that you close on the Property. This title insurance policy is in addition to the title insurance policy that you will be required to purchase to insure your first mortgage by the first mortgage lender.

5

The foregoing describes our shared appreciation loan, includes a summary of its important provisions, and informs you of some of the risks of a shared appreciation loan. THIS IS ONLY A SUMMARY AND IS NOT CONTROLLING IN THE EVENT OF ANY CONFLICT BETWEEN THIS NOTICE AND THE LOAN DOCUMENTS. THE LEGAL RIGHTS AND REMEDIES OF THE PARTIES WILL BE GOVERNED BY THE TERMS OF THE LOAN DOCUMENTS AND NOT THIS NOTICE.

Before you enter into a shared appreciation loan with us, we recommend that you and your attorney review the loan documents for the full text of all of the terms and conditions which will govern the loan.

Signed _[signature]_____ Date _May 8, 2007_
**David P. Ruschke**

Signed _____ Date _____
n/a

05/09/2007 13:37 FAX 952 852 4191        PRIMACY RELOCATION LLC    → JEANNIE CO

COPY  INTER-OFFICE MEMO

| | |
|---|---|
| **TO:** | Scott Ward, Ross Allen, Kim McEachron & David Whitescarver |
| **FROM:** | Primacy |
| **DATE:** | December 20, 2006 |
| **SUBJECT:** | SHARED APPRECIATION LOAN APPROVAL |

**David Ruschke, Chief patent Counsel is relocating to Santa Rosa, California from North Oaks, MN.** As part of the relocation assistance, it is recommended that Medtronic provide a Shared Appreciation Loan to ease the financial impact of the relocation to California.

Your approval is required to provide a Shared Appreciation Loan/Second Mortgage for an amount up to $250,000 to assist in the purchase of a home in a higher cost of living area.

Shared Appreciation Loans / Second Mortgages have been provided for employees moving to California primarily to assist relocating employees purchase a home in a higher cost of housing location.

Shared Appreciation Loans are secured by a second mortgage on the employee's new home. The loan is recorded as an asset on the books of the division charged with the relocation expenses. The Medtronic legal department has provided legal documents for use in securing these loans in the state of California.

The loan is provided for a period of ten years, however, other circumstances written into the loan document require payment in full if certain conditions are met.

Please sign below indicating your acknowledgement/approval of the loan amount noted above. Once all signatures have been secured, please return to the Consultant, Primacy Relocation, 1550 Utica Ave. South, Suite 555, St. Louis Park, MN 55416.

**APPROVALS:**

_____ 5/14/07        N/A _____
Jeannie Comer            Date              Scott Ward
Manager, Relocation & Employment Services  Sr. Vice President & President   Date
                                           Division: Vascular

_____ 12/20/06        _____ 12/20/06
Kim McEachron            Date              Ross Allen                    Date
VP Human Resources                         VP Finance & Administration
Division: Vascular                         Division: Vascular

_____ 12/20/06
David Whitescarver       Date
VP of Legal
Division: Vascular

J:\HumanResources\RELO\Relo's FY 06\1 SAL Memo Template

PAGE 02/02                    MEDTRONIC HR                707-5661323           16:18   12/21/2006